## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Abdalkareem Moala,                          Civ. No. 06-1531 (JNE/SRN)

       Plaintiff,

    v.                                      **REPORT AND RECOMMENDATION**

Michael J. Astrue,
Commissioner of Social Security,

       Defendant.

---

Jennifer Mrozik, Esq., Northwest Disability Services, 1611 West County Road B, Suite 106, Roseville, Minnesota 55113, on behalf of Plaintiff

Lonnie F. Bryan, Esq., Office of the United States Attorney, 300 South 4th Street, Suite 600, Minneapolis, Minnesota 55415, on behalf of Defendant

---

SUSAN RICHARD NELSON, United States Magistrate Judge

Pursuant to 42 U.S.C. § 405(g), Plaintiff Abdalkareem Moala seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), who determined that Plaintiff was no longer statutorily disabled and therefore no longer entitled to receive supplemental security income. The parties have submitted cross motions for summary judgment.  (Doc. Nos. 8, 11.)  The matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and District of Minnesota Local Rule 72.1.

## I.      BACKGROUND

### A.      Procedural History

Plaintiff was granted supplemental security income benefits beginning July 1, 1994, after

demonstrating that he met the criteria of Medical Listing § 11.18, Cerebral Trauma.  (Tr. at 24, 107.)

On February 23, 2003, the Social Security Administration (SSA) identified his case for reexamination.

(Id. at 62.)  Plaintiff subsequently underwent a consultative examination with Dr. Steven Geller.  (Id. at

134-136.)  Medical consultant Ronee Kennedy also assessed Plaintiff's residual functional capacity

(RFC), based on Plaintiff's medical file.  (Id. at 137-45.)  Dr. T. Arjmand reviewed and approved Ms.

Kennedy's RFC determination.  (Id. at 144.)

The SSA issued a Notice of Disability Cessation to Plaintiff on July 23, 2003, and advised him

that his benefits would cease as of October 2003.  (Id. at 39.)  Plaintiff's request for reconsideration

was denied.  (Id. at 56-58.)  Plaintiff appealed and sought a hearing before an Administrative Law

Judge (ALJ), which was held on August 8, 2005.  (Id. at 245.)  The ALJ denied Plaintiff's claim on

October 28, 2005.  (Id. at 21.)  Plaintiff filed a request for review with the Appeals Council, which

ultimately affirmed the ALJ's decision.  (Id. at 5-7.)

Plaintiff filed his Complaint in federal court on April 21, 2006, and subsequently moved for

summary judgment.  (Doc. Nos. 1, 8.)  In support of his motion, Plaintiff argues that the ALJ

improperly discounted medical evidence in the record and therefore failed to offer the Vocational

Expert (VE) a valid and complete hypothetical question.  Defendant disagrees, arguing that the ALJ's

findings are supported by substantial evidence in the record.

**B.     Factual Background**

Plaintiff, age forty-three at the time of the ALJ's decision, was considered a "younger person"

at all times relevant to the instant matter.  See 20 C.F.R. § 416.963.  He progressed in his education

through two or three years of high school in Iraq.  (Tr. at 251.)  In 1992, Plaintiff left the Iraqi army and

2

fled to Saudi Arabia, where he was attacked in the head with a machete and, as a result, suffered a brain injury with resulting hemiplegia on his left side.  (<u>Id.</u> at 134, 172-75, 256.)

At the administrative hearing, Plaintiff testified that he was unable to work because his medical condition had not improved since the SSA approved his application for benefits in 1994.  (<u>Id.</u> at 251.) He testified that his head was always painful where he was injured; his left cheek and right shoulder were painful; and he was numb on his left side, which made it difficult for him to function because he is left-handed.  (<u>Id.</u> at 252, 260.)  He also claimed to suffer from asthma and shortness of breath.  (<u>Id.</u> at 253.)  Plaintiff further testified that Dr. Pari Beyzavi treated him for depression and nightmares, and that Dr. Beyzavi diagnosed him with post-traumatic stress disorder.  (<u>Id.</u> at 257.)  Plaintiff stated that he could stand for only thirty minutes at a time due to pain in both knees, and could lift only seven or eight pounds.  (<u>Id.</u> at 258.)  He testified also that he had a driver's license and was able to drive.  (<u>Id.</u> at 250.)

With respect to activities of daily living, Plaintiff testified that he sometimes made a sandwich for himself, but his brother and friends helped with cooking, buying groceries, and taking care of his apartment.  (<u>Id.</u> at 254.)  When he shopped alone, he would buy only one or two bags of groceries. (<u>Id.</u> at 258.)  He stated that his brother and friends occasionally brought him along for activities, but he usually passed the day watching television and learning English.  (<u>Id.</u> at 254-55.)

### C.    Medical Evidence in the Record

In 1994, Dr. Jamil Hussain, Plaintiff's treating physician, completed a report detailing Plaintiff's physical condition at that time.  (<u>Id.</u> at 172-75.)  He noted that Plaintiff had suffered a brain injury, a "CVA [cerebrovascular accident] in the distribution of right middle cerebral artery and has significant

residual effect in the left upper and left lower extremities from the right-sided CVA." (<u>Id.</u> at 172.)  He

further remarked that the musculoskeletal system revealed "increased rigidity of the left upper and left

lower extremities with a foot drop on the left side." (<u>Id.</u> at 174.)  He also reported that Plaintiff's left

shoulder exhibited an adduction that was limited to eighty degrees and appeared "frozen." (<u>Id.</u>)  Dr.

Hussain observed that Plaintiff's left hand remained sensitive to pinprick and other sense of touch and

also that Plaintiff had "practically no grip in the left hand" and that his "active range of motion in the

small joints" was "barely visible." (<u>Id.</u> at 175.)  Finally, he noted that Plaintiff required a cane or walker

in order to walk.  (<u>Id.</u>)

Shortly before the SSA identified his case for reexamination, Plaintiff visited Dr. Hussain on

three occasions, chiefly for pulmonary difficulties, throat problems, and head pain.  (<u>Id.</u> at 155, 158,

163.)  In addition, he visited the emergency room four times to seek treatment for those and similar

ailments.  (<u>Id.</u> at 117, 128, 130, 160).  On April 1, 2002, Dr. Hussain stated, "There is no change in

the traumatic CVA in the distribution of the right MCA.  Remaining exam is unremarkable." (<u>Id.</u> at

158.)

On May 29, 2003, Plaintiff was examined by Dr. Stephen C. Geller, hired by the State of

Illinois Bureau of Disability Determination Services, to evaluate his disability resulting from his brain

injury.  (<u>Id.</u> at 134-36.)  Dr. Geller noted that Plaintiff had less numbness in his face and body and more

power in his left leg.  (<u>Id.</u> at 134.)  Dr. Geller observed no improvement, however, in the condition of

Plaintiff's left arm, and wrote that Plaintiff still suffered from left-sided head pain, sometimes sharp,

usually pounding and ranging anywhere from "2-9/10" in severity.  (<u>Id.</u>)  He noted that Plaintiff had a

marked decrease in the strength of his left hand and rated it a "2/5" as compared with "5/5" for his

right hand.  (Id. at 135.)  He remarked that Plaintiff's left hand still exhibited sensitivity to light touch,

pinprick, and vibration.  (Id.)  Dr. Geller also noted that Plaintiff had experienced pain in his right

shoulder for the past three months, lower back pain for the past eight or nine months, and arthritic pain

in his knees.  (Id. at 134.)

       Dr. Geller wrote that Plaintiff could walk about one block and climb about eight stairs before

his left leg became fatigued.  (Id.)  He stated that Plaintiff could stand for five to ten minutes and sit for

about two hours before he developed back pain.  (Id.)  Finally, Dr. Geller related that Plaintiff generally

could sleep three to four hours before his sleep was interrupted by head pain, right shoulder pain, or

back pain.  (Id.)  In his summary, Dr. Geller remarked that Plaintiff "apparently paid a terrible price to

come to the United States; he was granted [asylum] after he was very nearly killed by a head trauma

resulting in permanent right brain injury causing left upper extremity weakness to the point of near

uselessness."  (Id. at 136.)

       On July 11, 2003, Ronee Kennedy, a vocational consultant, conducted an RFC  assessment of

Plaintiff.  (Id. at 137-145.)  After reviewing Plaintiff's medical records, Ms. Kennedy concluded that

Plaintiff's medical condition had improved.  (Id.)  She noted that, at the time Plaintiff was approved for

benefits, he had a left foot drop with increased rigidity of the left arm and leg.  (Id. at 144.)  His left arm

appeared "frozen" at an eighty degree adduction.  (Id.)  In addition, his left arm and leg only had a

motor power rating of "1/5", and he could not grip with his left hand.  (Id.)  Finally, at the time Plaintiff

was approved for benefits, he used a cane or walker to ambulate.  (Id.)

       In examining the most recent medical evidence, Ms. Kennedy noted that Plaintiff's left hand had

become spastic with mild rigidity.  (Id. at 144.)  She further found that Plaintiff exhibited a decreased

ankle jerk, could walk normally, and was capable of all gaits without assistance.  (Id.)  However, Ms. Kennedy determined that Plaintiff could not "perform any reaching, handling or fingering with his left arm and hand."  (Id. at 140.)  Ms. Kennedy opined that Plaintiff had full use of his right hand and arm, as well as the ability to carry twenty pounds occasionally and ten pounds frequently.  (Id. at 138.)  She further opined that Plaintiff had the capacity to stand or sit for six hours in an eight hour workday.  (Id. at 140.)  Therefore, Ms. Kennedy concluded that Plaintiff "could perform light work, but must avoid any job that requires the use of both arms as he cannot use his left arm or hand at all."  (Id. at 144.)  In fact, she stated that the light work must not involve the use of his left arm and hand — even to assist his right arm and hand.  (Id. at 145.)  Given his limitations, she nonetheless concluded that Plaintiff could maintain employment as a radio and television page, a furniture rental consultant, or an investigator of dealer accounts, and noted that "certain of these jobs" have been performed by one-armed individuals. (Id.)  Dr. Arjmand reviewed and approved Ms. Kennedy's RFC assessment.  (Id. at 144.)

On August 23, 2003, Plaintiff underwent a second RFC assessment.  Dr. E.C. Bone opined that Plaintiff's medical condition had improved, but provided no additional analysis than that given in Ms. Kennedy's report.  (Id. at 164-71.)  Dr. Bone wrote that Plaintiff's left shoulder was limited to eighty degrees adduction, and that Plaintiff's left hand was spastic with mild rigidity, no grip, and a motor power rating of "2/5."  (Id. at 170.)

On September 16, 2005, at the request of the ALJ, Plaintiff was examined by Dr. Ward Jankus for a post-hearing determination of his RFC.  (Id. at 233-39.)  Dr. Jankus noted that Plaintiff had limited manipulative function in his left hand with respect to reaching in all directions, handling, fingering, and feeling.  (Id. at 235.)  Dr. Jankus thought that Plaintiff was "not able to reproducibly" engage in any

of these activities using his left hand.  (Id.)  He concluded that "for all practical purposes he is limited to just right handed work at this point."  (Id. at 239.)

### D.     Testimony of the Medical Expert

Dr. Paul Gannon, a neutral medical expert, appeared and testified at the administrative hearing. (Id. at 260-68.)  He first noted that Plaintiff's ability to walk had improved since 1994.  (Id. at 260.) When he considered all of Plaintiff's current impairments, Dr. Gannon concluded that Plaintiff did not have an impairment or combination of impairments that equaled or met a listing.  (Id. at 261.)  He stated that he would limit Plaintiff to work that did not involve walking or standing for more than two out of eight hours, and that "good use of his hands would be restricted to just the good use of the right hand."  (Id.)  However, Dr. Gannon clarified that he believed Plaintiff could use his left hand for "gross assist."  (Id. at 262.)  In response to a question about Dr. Arjmand's RFC assessment, Dr. Gannon testified that, "essentially, the left upper extremity is totally disabled."  (Id. at 265.)  He agreed that Plaintiff's left arm is nonfunctional and that Plaintiff is "basically a one-armed man."  (Id.)

### E.     Testimony of the Vocational Expert

VE Juletta Harren also testified at the administrative hearing.  (Id. at 260.)  The ALJ's first hypothetical question asked her to assume a person who could perform sedentary work which did not involve repetitive fine-fingering, power-gripping, twisting, or pounding with the left hand, among other limitations.  (Id. at 268.)  VE Harren stated that to work as an inspector, packager, or assembler, such a person would require the use of the left hand to perform gross manipulations of objects that were two to four inches in size.  (Id. at 268-69.)  When the ALJ modified the hypothetical question to limit the person additionally to work that involved only "gross-assist" with the left hand, VE Harren responded

that work as a surveillance system monitor would likely be the only job available to such an individual, but that the job did not exist in significant numbers in the national or regional economies.  (Id. at 270.) Finally, in response to a question from Plaintiff's counsel, VE Harren stated that no employment options would be available to a person restricted from using his left hand.  (Id.)

**F.      ALJ's Decision**

The ALJ engaged in an seven-step sequential evaluation, requiring an examination of the following issues: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix I; (3) whether the claimant has shown medical improvement; (4) whether any medical improvement is related to the claimant's ability to work, i.e. whether there has been an increase in the claimant's residual functional capacity based on the impairments present at the time of the most recent favorable medical determination; (5) if there has been medical improvement related to the claimant's ability to work, whether all of the claimant's current impairments or combination of impairments are severe; (6) whether the claimant can engage in past work; and (7) whether the claimant can perform other work that exists in significant numbers in the regional or national economy.  See 20 C.F.R. § 404.1594(f).

The ALJ first found that Plaintiff was not engaged in substantial gainful activity.  (Tr. at 15.)  At the second step, she determined that none of Plaintiff's impairments met or medically equaled an impairment in the listing of impairments.  (Id.. at 16.)  The ALJ then determined at step three that Plaintiff had experienced medical improvement since his most recent favorable medical determination. (Id.)

At the fourth step, the ALJ concluded that Plaintiff's improvement was related to his ability to work and that no exception to the medical improvement standard applied.  At the fifth step, the ALJ found that Plaintiff was severely impaired by a history of cerebral trauma, with residual left sided weakness, degenerative joint disease of the bilateral knees, and asthma.  (Id. at 18.)  The ALJ determined at the sixth step that Plaintiff retained the RFC to perform work

> involving lifting 20 pounds occasionally, and 10 pounds frequently; standing and walking for up to 2 hours out of an 8 hour day; and sitting for up to 6 hours out of an 8 hour day; with no heights; ladders, or over the shoulder work; no repetitive fine fingering, power gripping, or twisting with the left upper extremity; no reaching, pushing, or pulling with the left upper extremity; and in an environment with no smoke, fumes, or airborne irritants.

(Id.)  As the ALJ determined that Plaintiff had no past relevant work, she concluded that he could not return to his past work.  (Id. at 19.)  Finally, at the seventh step, the ALJ concluded that Plaintiff was capable of working in jobs that existed in significant numbers in the economy, such as assembler, inspector, and packager.  (Id.)  The ALJ based this conclusion on VE Harren's testimony.  Therefore, the ALJ found that Plaintiff was no longer disabled as of July 1, 2003.  (Id.)

## II.    PROCESS OF REVIEW

"The Social Security program provides benefits to people who are aged, blind, or who suffer from a physical or mental disability."  Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992); see also 42 U.S.C. § 1382(a).  A person is disabled if his or her physical or mental condition renders that person unable to do not only his or her previous work, but also any other kind of substantial gainful employment that exists in the national economy.  42 U.S.C. § 1382c(a)(3)(B).  The impairment must last for a continuous period of not less than twelve months or be expected to result in death.  Id.

§ 1382c(a)(3)(A); <u>see also</u> 20 C.F.R. § 416.909.

### A.       The Administrative Hearing

The SSA may terminate an individual's disability benefits if substantial evidence supports a

determination that the recipient has medically improved and is able to engage in substantial gainful

activity.  42 U.S.C. § 423(f).  Medical improvement is defined as "any decrease in the medical severity

of [the recipient's] impairment(s) which was present at the time of the most favorable medical decision

that [the recipient was] disabled or continued to be disabled."  20 C.F.R. § 994(b)(1)(i).  If the SSA

terminates a recipient's benefits, the recipient may request a <u>de novo</u> reconsideration.  20 C.F.R. §§

416.1409, 416.1402.  A claimant dissatisfied with the reconsideration may request a hearing before an

ALJ.  42 U.S.C. § 1383(c)(1)(A); 20 C.F.R. § 416.1429.  The ALJ must follow a seven-step analysis

in determining whether a claimant is disabled.[1]  <u>See</u> 20 C.F.R. § 416.994(b)(5).

### B.       Appeals Council Review

If dissatisfied with the ALJ's decision, a claimant may request review by the Appeals Council,

which may choose to hear or deny the request.  20 C.F.R. § 416.1467.  The decision of the Appeals

Council, or the ALJ if the Appeals Council denies the request for review, is the final decision of the

---

[1] (1) Does the claimant "have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of subpart P of part 404 of this chapter?"  (2) Has the claimant shown medical improvement?  (3) Is the medical improvement related to the claimant's ability to work?  (4) If there has been no medical improvement, do any exceptions apply? (5) If the claimant's medical improvement is related to his or her ability to work, are the claimant's combined, current impairments severe?  (6) Does the claimant have the RFC to perform his or her past work?  (7) Is there any other work in the national economy that the claimant can perform?  <u>See</u> 20 C.F.R. § 416.994(b)(5).  The evaluation procedure followed by the ALJ in this case is substantially similar to this evaluation procedure.  <u>See</u> 20 C.F.R. § 404.1594(f).

Commissioner, and is binding upon the claimant unless appealed to a federal district court within sixty

days after notice of the Appeals Council's action.  42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §

416.1481.

> ### C.    Judicial Review

Judicial review of the Commissioner's decision is limited to a determination of whether the

decision is supported by substantial evidence in the record as a whole.  Hutsell v. Sullivan, 892 F.2d

747, 748-49 (8th Cir. 1989).  Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).

The review is "more than a mere search of the record for evidence supporting the [Commissioner's]

finding."  Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

Rather, "'the substantiality of evidence must take into account whatever in the record fairly detracts

from its weight.'"  Id. (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).

The reviewing court must review the record and consider:

1.    The credibility findings made by the ALJ.
2.    The plaintiff's vocational factors.
3.    The medical evidence from treating and consulting physicians.
4.    The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.
5.    Any corroboration by third parties of the plaintiff's impairments.
6.    The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairments.

Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989) (citing Brand, 623 F.2d at 527).  A court

may not reverse the Commissioner's decision simply because substantial evidence would support an opposite conclusion, Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984), and in reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact, Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).  Instead, the court must consider "the weight of the evidence in the record and apply a balancing test to evidence which is contradictory."  Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir. 1987).  If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision, the court must affirm that decision.  Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

A reviewing court may recommend the modification or reversal of the Commissioner's decision with or without remanding the case for a rehearing.  42 U.S.C. § 405(g).  "Normally, absent substantial evidence in the record to support the ALJ's decision, the case is remanded for further proceedings."  Wolf v. Barnhart, Civ. No. 03-5255 (PAM/JSM), 2004 WL 2730097, at *1 (D. Minn. Nov. 23, 2004) (citations omitted).  However, a district court "may award benefits without remanding the case for a rehearing where the evidence in the record overwhelmingly supports an immediate finding of disability."  Id. (citing Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000)) (emphasis in Wolf).  Courts consider the Cruse factors in determining whether the record contains overwhelming evidence.  Id.

## III.   DISCUSSION

Plaintiff argues that the ALJ improperly discredited the medical testimony regarding his inability to use his left hand and therefore failed to include all of his limitations in her hypothetical question to the VE.  Although the ALJ did not expressly find that Plaintiff could use his left hand to grossly manipulate

12

objects, the Commissioner concedes that the ALJ implicitly made this finding.  The Commissioner

submits that this implicit finding is supported by substantial evidence in the record, and therefore, the

ALJ did not err in propounding the hypothetical question to the VE.  In the alternative, the

Commissioner argues that Ms. Kennedy's report proves that even if Plaintiff could not perform gross

manipulations with his left hand, he could nonetheless perform jobs existing in significant numbers in the

national economy.

      In her decision, the ALJ adopted the opinion of VE Harren, who clearly stated that in order for

Plaintiff to perform work in the national economy as a packager, assembler, or inspector, he would

need to be able to engage in gross manipulation of products two to four inches in size with his left hand.

As noted above, the ALJ characterized Plaintiff's RFC as limiting him "to no repetitive fine fingering,

power gripping, or twisting with the left upper extremity."  The ALJ then found that Plaintiff could

perform work as a packager, assembler, or inspector.  In order for the ALJ's RFC determination to

support her conclusion that Plaintiff could perform the jobs described by VE Harren, her determination

of Plaintiff's RFC necessarily would include an ability to grossly manipulate objects two to four inches

in size with Plaintiff's left hand.

      The Commissioner urges the Court to conclude that this implicit finding — that Plaintiff can

engage in the gross manipulation of objects with his left hand — is supported by both medical and non-

medical evidence in the record.  With respect to non-medical evidence, the Commissioner notes that

Plaintiff grocery shops on his own and carries two bags of groceries.  In addition, Plaintiff drives an

automobile and was able to work part-time at a grocery store.  As to medical evidence, the

Commissioner points to Dr. Geller's report that Plaintiff's left hand remained sensitive to pinprick, had

some power, showed some improvement, and could be expected to improve slowly.  The

Commissioner also directs the Court to Ms. Kennedy's report that Plaintiff could use his left hand

occasionally for feeling, and to Dr. Jankus's report that Plaintiff's left arm strength and left wrist

extension had improved and that his light touch was intact everywhere.

The Court disagrees that the ALJ's implicit finding is supported by substantial evidence in the

record.  Ms. Kennedy, the first examiner to assess Plaintiff's RFC, concluded that Plaintiff "could

perform light work but must avoid any job that requires the use of both arms as he cannot use his left

arm or hand at all."  (Tr. at 144.)  She specifically noted that, Plaintiff "cannot perform any reaching,

handling or fingering with his left arm and hand."  (Id. at 140.)  As handling is deemed to be

synonymous with gross manipulation for the purposes of an RFC evaluation (Id. at 140, 235), Ms.

Kennedy's determination that Plaintiff had some feeling in his left hand does not support a finding that

Plaintiff could engage in gross manipulation with his left hand.

Dr. Geller's report likewise does not provide any support for a tacit conclusion that Plaintiff

could engage in gross manipulation with his left hand.  Sensitivity to pinprick and the possibility of future

improvement does not mean that Plaintiff could manipulate objects two to four inches in size.

Dr. Jankus, the second physician to evaluate Plaintiff's RFC, concluded that "for all practical

purposes [Plaintiff] is limited to just right handed work at this point."  (Id. at 235.)  In his assessment,

Dr. Jankus indicated that Plaintiff's ability to reach, handle, finger, and feel with his left hand was

limited.  He then stated that Plaintiff was not able to reach, handle, finger, or feel with his left arm.  (Id.)

On the other hand, Dr. Jankus noted that Plaintiff could perform tasks such as writing, using a safety

pin, fastening his belt, and buttoning his shirt, using only his right hand.  (Id. at 239) (emphasis added).

14

Dr. Jankus also found that Plaintiff's left arm strength was a three or four on a five-point scale.  (Id.)

Clearly, Plaintiff's ability to use his right hand and having strength in his upper left arm does not support

the ALJ's implicit finding that Plaintiff manipulate objects with his left hand.  Therefore, Dr. Jankus's

report does not support the ALJ's decision.

Dr. Gannon, the medical expert, testified that "good use of both hands would be restricted to

just the good use of the right hand.  (Id. at 261.)  In response to a question about Dr. Arjmand's RFC

assessment, Dr. Gannon testified that "essentially, the left upper extremity is totally disabled."  (Id. at

265.)  Moreover, he stated that it would be reasonable to describe Plaintiff as "a one-armed man."

(Id.)  The testimony of Dr. Gannon is antithetical to a finding  that Plaintiff could use his left hand for

gross manipulation.

After considering all of the medical evidence in the record, the Court concludes that the ALJ's

implicit finding that Plaintiff could use his left hand for gross manipulation of objects two to four inches in

size is not supported by substantial evidence.  Nor is the finding supported by any non-medical

evidence of record, such as Plaintiff's daily activities.  Grocery shopping and driving can both be done

with one arm.

VE Harren testified that if Plaintiff could not use his left hand for gross manipulation — that is, if

Plaintiff could use his left hand only for "gross assist" — the only position available to him would be

surveillance system monitor, but this job does not exist in significant numbers in the regional or national

economies.  VE Harren further testified that if Plaintiff could not use his left hand even for gross assist,

he would have no viable employment options.  Therefore, unless Plaintiff could use his left hand for

gross manipulation, he could not perform any jobs that exist in significant numbers in the regional or

national economies.

In the alternative, the Government urges the Court to discredit entirely the testimony of VE Harren and adopt instead the report of Ms. Kennedy, the vocational consultant. According to the Government, Ms. Kennedy's report supports a conclusion that Plaintiff had a variety of employment options — even if he lacked the use of his left hand. However, the Court will not disregard the testimony of VE Harren in favor of Ms. Kennedy's report. The record is completely devoid of Ms. Kennedy's qualifications and the extent to which she reviewed or was familiar with Plaintiff's medical history. VE Harren, on the other hand, is a neutral witness, who is an expert in vocational matters. VE Harren reviewed Plaintiff's medical record, listened to the hearing testimony, and testified at the hearing subject to cross-examination. In addition, Ms. Kennedy's report is inconsistent with both VE Harren's testimony and the evidence of record. Thus, the greater weight of credibility is due to VE Harren. Even if Ms. Kennedy's report was accorded equal weight, the report would not, in and of itself, constitute substantial evidence to support a conclusion that Plaintiff could perform work existing in substantial numbers in the national economy in the face of other substantial evidence of record.

The record before the Court supports a reversal of the Commissioner's decision. Where the medical evidence in the record, coupled with the testimony of the neutral medical and vocational experts and the testimony of the plaintiff, overwhelmingly demonstrate that the plaintiff is entitled to benefits, a court may reverse the Commissioner's decision and concomitantly award benefits. In Jackson v. Bowen, a VE testified that if the claimant's subjective complaints were credible, he would not be able to perform any work. 873 F.2d 1111, 1115 (8th Cir. 1989). The district court found the complaints credible and granted benefits based on the VE's testimony, without remanding for further

16

evidentiary proceedings.  Id.  The Eighth Circuit affirmed the immediate grant of benefits because the

objective medical evidence, the plaintiff's subjective complaints, and the testimony of the VE

overwhelmingly demonstrated that the plaintiff was entitled to benefits. Id. at 1114.  The court

specifically rejected the Commissioner's request for a remand, characterizing the action as unnecessary,

because a district court has the power to award benefits without remand when the record supports a

finding of disability.  Id. at 1114-15.

      Likewise, in Fowler v. Bowen, the Eighth Circuit found that an immediate grant of benefits was

appropriate because the plaintiff's subjective complaints and the medical evidence overwhelmingly

supported a finding of disability.  866 F.2d 249, 252 (8th Cir. 1989).

> When the record is overwhelmingly in support of a finding of disability, there is no need
> to remand to the Secretary for further consideration. . . .  The vocational expert testified
> in response to a hypothetical question containing all of Fowler's limitations that there
> would be no jobs in the economy which he could perform. We agree with this
> conclusion, and accordingly, we reverse the decision of the district court and remand
> with directions to enter a judgment in favor of Fowler awarding him disability benefits in
> the appropriate amount.

Id. at 253 (citations omitted).

      In the case at hand, VE Harren testified that if Plaintiff could use only his left hand for gross

assist, or was limited to using only his right arm, he could not hold a job existing in significant numbers in

the national economy.  The record clearly establishes that Plaintiff is indeed limited in this manner.

Accordingly, the Court finds that the record in this case overwhelmingly supports an immediate award

of benefits to Plaintiff.

IV.     **CONCLUSION**

The ALJ's decision is not supported by substantial evidence in the record.  Rather, the record clearly establishes that Plaintiff is entitled to continue receiving disability benefits.  The medical evidence, Plaintiff's subjective complaints and reported daily activities, and the testimony of VE Harren overwhelmingly support a finding of disability.  Remand is unnecessary because Plaintiff is entitled to benefits based on the current record, and benefits should be reinstated, including retroactive benefits, immediately.

**THEREFORE, IT IS HEREBY RECOMMENDED that**:

1.      Plaintiff's Motion for Summary Judgment (Doc. No. 8) be **GRANTED**;

2.      Defendant's Motion for Summary Judgment (Doc. No. 11) be **DENIED**;

3.      The Commissioner's decision be **REVERSED**; and

4.      Plaintiff's supplemental security income benefits, including retroactive benefits, be paid and reinstated immediately.

Dated:  August 8, 2007

                                          s/ Susan Richard Nelson
                                         SUSAN RICHARD NELSON
                                         United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 23, 2007**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.